Hipolito Vera Osorio
Reg.No. 94312 079
Eden Detention Center
P.O.Box. 605
Eden, Texas  76837

In pro Per

HILDA G. TAGLE
UNITED STATES DISTRICT JUDGE

United States District Court
Southern District of Texas
RECEIVED

NOV 1 2 2002

United States District Court
Southern District of Texas
FILED

NOV 1 2 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

B-02-221

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE No. 1:00CR00396-001 |
| | ) | |
| PLAITIFF, | ) | |
| | ) | MOTION FOR REDUCTION OF |
| Vs. | ) | SENTENCE PURSUANT TO |
| | ) | 28 U.S.C.A. 2255. |
| HIPOLITO VERA OSORIO, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## INTRODUCTION

Comes Now Defendant HIPOLITO VERA OSORIO and respectfully moves this Honorable Court pursuant to 28 U.S.C. § 2255 to reduce his sentence by 2 points.

He justifies this downward departure on grounds that counsel failed to argue that Defendant ineligibility for minimum security confinement, drug program, and pre-release custody as a result of his status as a deportable alien constituted significant mitigating factors that should have been considered by the sentencing Court.

Defendant asserts that the disparate sentences that result between alien and American inmates as a consequence of Immigration detainers lodged automstically in an

1

alien's Bureau of Prisons (BOP) file constitute a violation of equal protection under the Law. Const. Amend. 14.

STATEMENT OF THE FACTS

Defendant is a native of Mexico, a unlawful found in the United States On January 3o, 2001, Defendant plea guilty to charges pursuant to §§ 1326 (a) and 1326 (b). Defendant thus became automatically deportable pursuant tu 8 U.S.C. §§ 1227(a)(2)(a)(iii) and 1 1 01 (a)(43).

The pre-sentence report (PSI) cleary states that Defendant could be deported as a result of his cinviction., and counsel was well aware that Defendant was an alien. In spite of this, counsel fails to raise the issue of deportability as a mitigating circumstance at sentencing. Defendant claims that this prejudicial omission by counsel constitutes a performance below accepted professional standards which warrant resentencing.

LAW AND ARGUMENT

1. Prejudicial Error

Pursuant to United States v. Gaither, 1 F.3d. 1040 (10th Cir. 1993), trial Courts may properly depart downward from sentencing guidelines if Sentencing Commission did not account for mitigating factors In United States v. Smith, 27 F, 3d. 649 (D.C. 1994) (the defendant's ineligibility for pre-release custody and minimum security confinement as a result of his status as a deportable alien constituted a mitigation factor to be considered by the trial Court). See also United States v. White., 71 F. 3d. 920, 922 (1995) (trial Court granted defendant six month downward departure in accordance with Smith because defendant was an alien and accepted deportaton, giving up his right to appeal,)

and United States v. Agu., 763 F. Supp. 703 (1991) (Trial court departed downward to account for mitigating circumstances stemming from consequences of alien defendant's accepting deportation).

The United States Sentencing Commission did not consider that the impact of a defendants status as a deportable alien would beget him harsher treatment by the Bureau of Prisons. U.S. v. Anderson, 82 F.3d 436, 439 (D.C. Cir. 1996). In citing U.S. v. Smith, Smith, 27 F.3d 649 (D.C. Cir. 1994), the Anderson court said:

> "In that case, holding that a downward departure was permissible where defendant would serve his sentence under harsher conditions solely because he was a deportable alien, neither the majority nor the dissent could find any suggestion that the Commission had considered that circumstances at all in establishing the guidelines."

Anderson, 82 F.3d at 438.

In Smith the court carefully analyzed the Bureau of Prisons approach to determining whether a deportable alien may be eligible for 'community confinement' (halfway house) for the last ten percent of his sentence and whether he might be designated to a minimum security facility before the last ten percent of his sentence. Smith, 27 F.3d at 654. The court concluded that a downward departure may be appropriate if the defendant's status as a deportable alien is likely to cause him to be precluded from these benefits. Id. at 655.

Although the Eleventh Circuit has taken a contradictory approach to this issue in U.S. v. Veloza, 83 F,3d 380, 382 (11th Cir. 1996), the conflict among circuits creates the

need to consider this matter further. The Veloza court relies on U.S. v. Restrepo, 999 F.2d 640, 644 (2nd Cir. 1993). Also see U.S. v. Ebolum, 72 F.3d 35 (6th Cir. 1995), and U.S. v. Mendoza-Lopez, 7 F.3d 1483 (10th Cir. 1993):

As the Smith court noted,

"Restrepo was followed without further explanation in U.S. v. Mendoza-Lopez, 7 F.3 1483, 1487 (10th Cir. 1993), and in U.S. v. Nnanna, 7 F.3d 420 ( Cir. 1993). U.S. v. Alvarez-Cardenas, 920 F.2d 734 (9th Cir. 1990), rejected a defendant's unexplained claim that his status as a deportable alien was grounds for a downward departure. In that context the court indeed observed that the mere fact of deportability did not render his crime serious or speak to his character. Id. at 737. Thus, Lara [905 F.2d 599 (2nd Cir. 1990)]$^1$, and it sequelae appeared to be the only cases expressly addressing the issue of departures from circumstances that accidently lead to an increase in the objective severity of defendant's conditions of incarceration. Cf. Dissent at 668.

Smith, 27 F.3d at 655, n.6. In other words, the Ninth and Tenth Circuits have held that the fact that someone is deportable is not, in and of itself, a basis for downward departure. However, they have neither explained why nor delved into the facts of the case. Only the Second Circuit has, in Lara.

Ultimately relying on U.S.S.G., Ch. 1, Pt. A, § 4(b) and 18 U.S.C. § 3553(b), the Smith court soundly rejected the reasoning of Restrepo and by inference Veloza. In 18 U.S C. § 3553(b), Congress directed that:

---

$^1$    In Lara, the court found departure permissible because of defendant's potential for victimization due to his diminutive size, immature appearance and bi-sexual orientation. Id. At 601.

> "The court shall impose a sentence of the kind, and within the range referred to in subsection(a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines ... ."

See Smith, 27 F.3d at 651. Ch. 1, Pt. A, § 4(b) of the guidelines provides that such departures will be highly infrequent. Also see Smith, 27 F.3d at 655.

The Bureau of Prisons policy on the matter allows assignment to a minimum security prison or community correction center for deportable aliens who have a history of strong family or community ties, of domicile in the U.S. of five years or more, and stable employment. Program Statement 5100.04: Security Designation and Custody Classification Manual, Ch. 2-9 Id. at 655. The Bureau of Prisons applies the same criteria to its determination as to whether an alien is eligible for minimum security facility. Id. at 654.

The 9th Circuit has held that the fact of deportability, without more, is insufficient to warrant a downward departure under U.S.S.G. § 5K2.0. United States vs. Cubillos, 91 F. 3d 1342 (9th Circ. 1996). It further held that "[t]he district courts must make a refined assessment of the many facts bearing on the outcome." Id @ 1345. Defendant takes the position that the circumstances described in the next section warranted that counsel argue for, and the Court consider at sentencing, the effects of his mandatory INS detainer on Defendant's incarceration.

II. <u>Ineffective Counsel</u>

5

Claims of ineffectivity of counsel must state that counsel's errors of omissions constituted a failure to exercise the skill and judment of a reasonably competent attorney, and that counsel's deficient performance prejudicial Defendant. <u>Strickland v. Washington</u>, 446 U.S. 668, 686 (1984).

In the insant case, counsel was aware that Defendant was an alien.

Further, as stated above, the PSI makes it clear that Defendant is subject to deportation.

Counsel also notified Defendant that he could be deported as a result of his conviction. Despite these flags, counsel inexplicably fails to raise deportability as a mitigating factor at sentencing or to advise Defendant of this relief.

This is even more perplexing in light of the Attorney General's Sentencing Memorandum to all U.S. Attorneys dated April 28,1995, authorizing prosecutors to agree to recommend a one or two level downward departure from the applicable guideline sentencing range in return for an alien's concession of deportability and agreement to accept a final order of deportability. Although the U.S. Attorney's Office for this District has chosen not to exercise such discretion trhough this memorandum the Attorney General concedes that 'such downward departure is Justified on the basis that it is conduct not contemplated by guidelines. See U.S.S.G. § 5K2.0.' App. A at page 2. Counsel failed to raise this matter with the U.S. Attorney's Office durning plea negotiations. Thus inexplicably and gratuitously foreiting this bargaining chip to Defendant's detriment.

6

This would not be so bad were it not for Defendant's futher ineligibility for BOP early release programs. Defendant is now rendered ineligible to participate in the Drug Rehabilitabon Program as well. 18 U.S.C. § 3621. Succeful candidates typically obtain up to 1 year reduction in sentence upon completion of course.

Defendant's disqualificabon for community supervised "aftercare" as a result of this Immigration detainer renders him ineligible for this program. 18 U.S.C. § 3621 (e) Defendant is futher barred from qualifying for early release pursuant to 18 U.S.C. 3624(c), a program which enables the prisoner to be phased into the community up to six months prior to his release date.

As an example of how these benefits create sentencing disparities, Defendant illustrates the following case: an American sentenced to 60 months for a drug offense is eligible for a maximum reduction in his sentence of 1 year drug program and 6 months halfway house. Without considering Good Conduct Time credits, which is common to all inmates, the American is out on the streets a year and half earlier than his alien counterpart. This disparate treatment is undeserved, and constitutes a violation of equal protection of the Laws. Const. Amend. 14.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant respectfully request that this Honorable Court grant him a two point downward departure from his sentence.

Respectfully sumitted this 25th day of September Of 2002

*Hipolito Vera*
Hipolito Vera Osorio

7